UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATASHA GRACE, MINOR CHILD MG, MINOR CHILD MG2, MINOR CHILD MG3, MINOR CHILD AG, MINOR CHILD MP,     Plaintiffs, <br><br> v. <br><br> BOARD OF TRUSTEES, BROOKE EAST BOSTON; BROOKE SCHOOL FOUNDATION, INC,     Defendants. | C.A. No. 1:19-cv-10930-GAO |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This federal lawsuit was prompted by a post-it notepad striking plaintiff's arm then falling to the floor. The minor Plaintiff's sixth grade teacher was distributing post-it notes to the class by tossing them on student desks as she walked down the aisles. This making of mountains from molehills is emblematic of Plaintiffs' entire lawsuit. Over the course of three school years Plaintiff reported a handful of incidents where classmates called him "gay" or "skittles", all of which the School officials investigated and took disciplinary action when appropriate. Plaintiff M.G. had behavioral problems of peer-to-peer conflict with classmates and disobedience towards teachers. In response the School investigated and issued disciplinary consequences, but also met with the parent and psychological counselors to develop a behavioral plan to support M.G. The School Administration was highly responsive, engaged and caring in addressing M.G.'s education. The School had detailed policies and practices addressing harassment and bullying prevention and the State DESE investigation concluded the School responses complied with applicable law. The

1

School was not deliberately indifferent to any claims of sex-based harassment under Title IX. Plaintiff's other federal and state law claims are also misplaced, warranting summary judgment.

## II. <u>FACTS</u>

Pursuant to Local Rule 56.1, the Defendants have submitted the accompanying Joint Statement of Material Facts, which is incorporated here by reference. <u>See</u> Def. Stmt. of Facts ("SOF"). Brooke Charter School East Boston is a K-8 school and one of four campuses under the state approved public school charter. <u>See</u> SOF ¶¶3-6. The minor Plaintiff, M.G. was a student at Brooke East Boston for grades Four through Six, from 2015 to 2018. <u>See</u> SOF ¶¶23-76. Plaintiff's mother Natasha Grace considered Brooke East Boston "a wonderful school" and testified "The Brooke, academically, is a great school." <u>See</u> SOF ¶¶18, 76. Ms. Grace acknowledged that her son M.G. had disciplinary issues and that "He was defiant and everything towards adults because he didn't trust adults anymore." <u>See</u> SOF ¶22. Ms. Grace regularly communicated with Brooke School Administrators with concerns about her son, always getting a response form the Dean of Students and meetings to voice her concerns. <u>See</u> SOF ¶¶19-21. Ms. Grace's concerns with the administration were the effectiveness of their responses to M.G.'s issues, not the lack of response. <u>See</u> SOF ¶21. She would complain that she didn't like how the Principal handled things, or was dissatisfied with the type or extent of discipline issued. <u>See</u> SOF ¶¶23, 32, 47.

In Fourth Grade, Plaintiff M.G. had incidents of peer-to-peer conflict with a classmate MV involving pushing, tripping and M.G. calling the classmate "dumb", which were investigated, consequences issued, but not deemed to be "bullying" under school policies. <u>See</u> SOF ¶¶23-29. Plaintiff also received discipline that year for disrespectful behavior towards a bus driver. <u>See</u> SOF ¶30. There were no incidents during Fourth Grade where Plaintiffs reported to the School Administrators any name-calling using homosexual epithets. The first report concerning

Plaintiff's peers calling him names was in Fifth Grade, when M.G. said unidentified students called him names, but M.G. said "he didn't care cause he's not gay nor does he want to be a transgender". See SOF ¶¶34, 41.  Plaintiff spoke to both the Dean of Students Ms. Dudley and his teacher Ms. Nissan about this, and Ms. Nissan responded by suggesting a book *Gracefully Grayson*, for M.G. to read.  See SOF ¶34.  Remarkably, neither M.G. nor his mother ever read the book, nor did any other classmates see the book left on M.G.'s desk.  See SOF ¶40.  The only Fifth Grade report of a homosexual epithet, beside the unidentified rumors that M.G. was "gay", was an occasion where a bus monitor spoke with a female student who said she didn't like M.G. "because I think he is gay".  See SOF ¶42.  In response, Dean of Students Dudley investigated and gave counselling to the bus monitor.  See SOF ¶¶43-44.  In Fifth Grade M.G. had two episodes of peer conflict with MV in the hallway and playground, wherein both students were disciplined, and there was no allegation of homosexual epithets reported to the School.  See SOF ¶¶45-49.

In Sixth Grade, two episodes of homosexual epithets towards M.G. were reported and investigated.  See SOF ¶¶50-54.  The first was found to have happened during summer camp before the school year, precluding discipline, and the second was older boys calling M.G. "skittles" which promptly resulted in discipline for both students.  See SOF ¶¶50-54.  By Sixth Grade, Plaintiff's defiant classroom behavior increased, resulting in repeated Team Meetings between the parent, administration, and psychologist to develop behavioral plans to support M.G.  See SOF ¶¶55-59. Plaintiff's peer-to-peer conflict that year included receiving an online threat from a classmate E.D. which was taken seriously, investigated, and resulted in a suspension of the classmate.  See SOF ¶¶60-61.  In May 2018, Plaintiff also witnessed a playground fight involving the student MV, who was being escorted by a teacher back to school, when M.G. approached, and had to be kept separated from the student M.V., who was suspended from school for fighting.  See SOF ¶¶62-64.

Plaintiff's final grievance is a preposterous claim that his Sixth Grade teacher tossing post-it notes on his desk was an assault, which caused Plaintiff's mother Ms. Grace to immediately travel to the school and confront the teacher in the middle of instructing a class. <u>See</u> SOF ¶¶65-69. The School investigated, found no assault took place, and sent Ms. Grace a No Trespass letter to ensure she would not again disrupt the school. <u>See</u> SOF ¶¶71-74. Ms. Grace thereafter withdrew her son from enrollment. <u>See</u> SOF ¶75. The Massachusetts Department of Elementary and Secondary Education later investigated Plaintiff's claims and found the Charter School's investigations and responses complied with the applicable anti-bullying laws. <u>See</u> SOF ¶¶77-81.

## II. <u>STANDARD OF REVIEW</u>

This court is well-familiar with the standard of review upon a Motion for Summary judgment. <u>See</u> Fed. R. Civ. P. 56; <u>Miceli v. JetBlue Airways Corp.</u>, 914 F.3d 73, 81 (1st Cir. 2019).

## IV. <u>ARGUMENT</u>

### A. <u>The Federal Law Claims Fail</u>

#### 1. <u>There was no Title IX Violation by Alleged Peer-to-Peer Name-Calling</u>

Count I of the Complaint alleges that the minor Plaintiff MG was a victim of "sexual harassment under Title IX because male and female students and employees of School harassed him regularly in 4th, 5th, and 6th grade" and such harassment was "based on sex and gender-based stereotypes … by calling MG derogatory names in reference to his perceived homosexuality." <u>See</u> Pl. Compl. ¶¶82-83. The Complaint also alleges "Defendants knew that MG was repeatedly the target of physical bullying by MV due to MG's perceived homosexuality."[1] <u>See</u> Pl. Compl. ¶84.

---

[1] The Count I heading references a violation of "Title VII" in addition to "Title IX", however the heading is the sole mention of Title VII. Title VII of the Civil Rights Act of 1964 governs "Employer Practices" and provides that it is unlawful for an employer to "fail or refuse to <u>hire</u> or to <u>discharge</u> any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of <u>employment</u>, because of such individual's … sex." <u>See</u> 42 U.S.C.A. § 2000e-2(a) (emphasis added). There is no viable distinct cause of action under Title VII for a student alleging discrimination in education – the student's remedy, if any, lies under Title IX.

## a. <u>Elements of Proof of a Title IX Violation</u>

Discrimination based on sex in programs or activities receiving federal education funds is prohibited by Title IX of the Education Amendments of 1972.  <u>See</u> 20 U.S.C. §§ 1681-1688; <u>see also</u> 34 C.F.R. pt. 106.  Section 901(a) of Title IX provides: "No person in the United States shall, <u>on the basis of sex</u>, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." <u>See</u> 20 U.S.C. § 1681(a) (emphasis added).  "The statute's only express enforcement mechanism, § 1682, is an administrative procedure resulting in the withdrawal of federal funding from institutions that are not in compliance, [however the U.S. Supreme] Court has recognized an implied private right of action."  <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 555 U.S. 246, 255 (2009). "Two types of harassment are actionable under Title IX: quid pro quo harassment and hostile environment harassment."  <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 73 (1st Cir. 2011).  Because quid pro quo harassment is not alleged or implicated here, this Court need only consider the elements of proof for hostile environment harassment.  <u>Id.</u>

"In general, a hostile environment claim under Title IX requires acts of sexual harassment that are so severe and pervasive as to interfere with the educational opportunities normally available to students.  To limn such a claim, the plaintiff must identify 'a cognizable basis for institutional liability.'  This necessitates a showing that a federal funding recipient acted with deliberate indifference toward known acts of harassment occurring in its programs or activities." <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 73 (1st Cir. 2011) (citations omitted).  "Title IX's 'actual knowledge' requirement demands that the official who is informed of the alleged harassment be a person who, at a minimum, has the authority to institute corrective measures."  <u>Santiago</u>, 655 F.3d at 74.  The U.S. Supreme Court addressed school district liability for peer harassment in <u>Davis v.</u>

Monroe County Bd. of Educ., 526 U.S. 629, 632 (1999).  The Davis Court extended liability "in certain limited circumstances" where a School, as recipient of federal funding, may be "held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 643, 650.

Thus, to demonstrate liability for a hostile environment under Title IX, plaintiff must show: (1) that he "was a student, who was (2) subject to harassment (3) based upon sex; (4) that the harassment was sufficiently severe and pervasive to create an abusive educational environment; and (5) that a cognizable basis for institutional liability exists." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 66 (1st Cir. 2002).  As for the fifth element of institutional knowledge: "To satisfy the fifth part of this formulation, the plaintiff [ ] must prove that a school official authorized to take corrective action had actual knowledge of the harassment, yet exhibited deliberate indifference to it."  Id.  Deliberate indifference in the case of student-on-student harassment requires that the school's "response (or lack thereof) is clearly unreasonable in light of the known circumstances."  Porto v. Tewksbury, 488 F.3d 67, 73 (1st Cir. 2007).  It is not enough for a plaintiff to show "that the school system could or should have done more."  Id.  "[T]he fact that measures designed to stop harassment prove later to be ineffective does not establish that the steps taken were clearly unreasonable in light of the circumstances known by [a defendant] at the time." Id. At 74. Title IX "does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by [complainants]."  Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 174 (1st Cir. 2007), rev'd on other grounds, 555 U.S 236 (2009).

**b.** **The School's Attentive Responses Preclude Finding "Deliberate Indifference"**

Deliberate indifference under Title IX is "a stringent standard of fault, requiring proof that a [defendant] disregarded a known or obvious consequence of [its] action or inaction." Porto v. Town of Tewksbury, 488 F.3d 67, 73 (1st Cir.), cert. denied, 552 U.S. 992 (2007). To be liable for deliberate indifference under Title IX, "the harassment must take place in a context subject to the school district's control." Davis, 526 U.S. at 644-645 (1999). Liability may exist only where the school district "exercises substantial control over both the harasser and the context in which the known harassment occurs." Id. For purposes of this standard, a recipient's actions will be considered "deliberately indifferent" "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."[2] Davis, 526 U.S. at 648. In the present case, Plaintiffs cannot meet this stringent standard as a matter of law.

A review of similar reported cases of Title IX claims in the context of peer-on-peer harassment is instructive. In Morgan v. Town of Lexington, 823 F.3d 737 (1st Cir. 2016), the court reiterated that an actionable claim requires sex or gender-based animus in the context of the bullying acts alleged. The Morgan case included allegations under Title IX that one of the bullying incidents involved peers pulling down the plaintiff's pants in front of other students, including girls. Id. The Morgan court reasoned that while in certain contexts the act of pulling down another student's pants might be considered a plausible violation of Title IX, in the context of the case as presented, sex or gender-based animus by the accused peers could not be inferred. Morgan, 823 F.3d at 745. The court further stated the other bullying acts were insufficient to bolster the single incident of conduct that the parents/student argued was sex or gender-based. Id. Thus, the

---

[2] In other words, "[t]o demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." Camilo–Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir.1998), cert. den'd, 525 U.S. 1105 (1999)

allegations were not "sufficiently 'severe' and/or 'pervasive' to supply a sexual harassment claim under Title IX," and the court ruled in favor of the town.

In <u>Porto v. Town of Tewksbury</u>, 488 F.3d 67, 73-76 (1st Cir. 2007), the court concluded that even if a middle school student has been subjected to severe, pervasive, and objectively offensive harassment by another student, under <u>Davis</u> the student must provide evidence that the school system was "deliberately indifferent" to that harassment in order to prevail. In <u>Porto</u>, school officials responded to parents' complaints, separated the two students, imposed noncontact restrictions, and referred both to the school guidance counselor. <u>Porto</u>, 488 F.3d at 70-71. "By all indications, Tewksbury's methods were working" until the two boys were discovered together in a bathroom stall and one of them told a school facilitator that they had engaged in sexual intercourse. <u>Porto</u>, 488 F.3d at 74-75. In reversing the trial court's judgment for the plaintiffs, the court noted that "the fact that measures designed to stop harassment prove later to be ineffective does not establish that the steps taken were clearly unreasonable in light of the circumstances known by Tewksbury at the time." <u>Porto</u>, 488 F.3d at 74.

In <u>Fitzgerald v. Barnstable School Comm.</u>, 504 F.3d 165, 178 (1st Cir. 2007), <u>rev'd on other grounds</u>, 129 S. Ct. 788, 792, 798 (2009), decided a few months after the <u>Porto</u> decision, the First Circuit considered facts it characterized as "grotesque" at the outset: peer-on-peer sexual harassment of a kindergarten student by a third grader on a school bus. <u>Fitzgerald</u>, 504 F.3d at 168-69. Again, looking to <u>Davis</u> for the legal standards of a Title IX sexual harassment claim, the court found that the plaintiffs had not shown that the defendants exhibited "deliberate indifference" to the plaintiffs' complaints of harassment. <u>Fitzgerald</u>, 504 F.3d at 173-75. The defendants' actions, which included meeting with the student and her parents, launching an investigation consisting of multiple interviews, cooperating with a separate police investigation, taking the

police investigation into account when considering disciplinary options, and offering to place the
student on a different bus, were sufficient, in the court's view, to overcome the "deliberate
indifference" standard imposed by Title IX and Davis.  Fitzgerald, 504 F.3d at 172-73.  The court
acknowledged that:

> "[t]hese actions may not have constituted an ideal response to the complaint of
> harassment.  In hindsight, there may be other and better avenues that the School
> Committee could have explored or other and better questions that could have been
> asked during the interviews.  But Title IX does not require educational institutions
> to take heroic measures, to perform flawless investigations, to craft perfect
> solutions, or to adopt strategies advocated by parents.  The test is objective –
> whether the institution's response, evaluated in light of the known circumstances,
> is so deficient as to be clearly unreasonable.  The response here cannot plausibly be
> characterized in that derogatory manner."

Fitzgerald, 504 F.3d at 174.

In the present case, in light the investigatory, preventative, and disciplinary steps the
Defendant took in response to the known alleged harassing conduct, the School's conduct was
appropriate and not "clearly unreasonable" as a matter of law.  See Porto, 488 F.3d at 76.  The
Plaintiff Ms. Grace concedes that the School frequently communicated with her, regularly set up
meetings with her, and objects only to the handling or outcomes of her complaints.  See SOF ¶¶19-
21, 23, 32, 47.  The School did respond to the allegations of peer-on-peer bullying by investigating
and disciplining student offenders where appropriate, consistent with school policies.[3]  See
SOF¶¶26, 28-29, 42-45, 47, 50-54, 60-64.  The School did not identify any of the peer conflict as
Plaintiff being a bullying victim, but instead as DESE recognized, involved M.G.'s "habits of
initiating and engaging in oppositional interactions with his peers."  See SOF ¶¶26, 29, 45, 80.
There is no evidence that any of the peer conflict was based on sex or perceptions of Plaintiff's

---

[3]  Moreover, while not in dispute here, even a school district's "failure to comply with [its] regulations ... does not
establish the requisite ... deliberate indifference."  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291–92
(1998).  In Gebser, the Court noted that it has never held "that the implied private right of action under Title IX allows
recovery in damages for violation of those sorts of administrative requirements."  Id. at 292.

sexual preference, nor did Plaintiffs ever report to the school the peer conflict was so motivated. The School system took affirmative steps to meet with Plaintiff, outside therapists and the School counselor to develop a behavioral support plan for M.G. See SOF ¶¶57-59. There was no deliberate indifference to any known instances of harassment.

Nor may Plaintiff succeed in attaching liability by pointing to alleged incidents of harassment of which the School had no actual knowledge. The School's knowledge of particular, isolated incidents of peer conflict do not establish actual knowledge of harassment based on sex in violation of Title IX. See, e.g. Thomas v. Bd. of Trustees, 667 F. App'x 560, 561 (8th Cir. 2016) (holding college's knowledge of student's uncorroborated prior charges of robbery, rape and sexual harassment were insufficient to establish that the college had actual knowledge of a risk of harm from that student); see also Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998) (finding a single complaint of a teacher making inappropriate comments insufficient to create actual knowledge of a sexual relationship between the teacher and a student). The First Circuit recently rejected allegations that "the 'superintendent and principal and other teachers' 'ha[d] knowledge or ought to have had knowledge' of the events" because "[s]uch constructive knowledge is plainly insufficient."[4]  Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 7 (1st Cir. 2020). Here, despite Plaintiff's allegations, there is no evidence that the School officials had actual knowledge of any alleged harassment other than the incidents which the School investigated.

**c. The Title IX Claim Fails because there is No Proof of Harassment "Based on Sex"**

Plaintiffs' Title IX claim also fails as a matter of law because there was no harassment "based on sex." See 20 U.S.C. § 1681(a). "Discrimination on the basis of sex is the sine qua non

---

[4]  The First Circuit, however, allowed the Plaintiff's claims arising from a student-on-student rape, and non-consensual touching by a teacher, to survive because the complaint sufficiently alleged actual knowledge by the School officials. See Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020).

of a Title IX sexual harassment case, and a failure to plead that element is fatal." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 66 (1st Cir. 2002) (rejecting Title IX claim of female student who alleged school discipline matron peered into bathroom stall where plaintiff was relieving herself). The U.S. Supreme Court has cautioned against viewing childhood teasing as prohibited sexual harassment, because "schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. … Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." Davis, 526 U.S. at 651-652. The Supreme Court held that in these circumstances, "Damages are not available for simple acts of teasing and name-calling among school children, however, even where th[o]se comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." Davis, 526 U.S. at 651–652. Accordingly, it is not enough to establish that "a student has been teased … or called ... offensive names." Id. When discussing similar statutory language of Title VII, the Supreme Court has made clear that in all sexual harassment cases, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations," but in fact constituted discrimination "because of ... sex." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

Scrutiny of the undisputed facts demonstrates that the alleged bullying conduct does not qualify as harassment "based on sex" under case law interpreting Title IX. The entirety of Plaintiff's reported homosexual epithets were being called "gay" or "skittles" by different school

children in isolated incidents.   While certainly such name-calling may be hurtful and uncomfortable for an elementary school student, it is not enough to establish a Title IX violation when "a student has been teased … or called ... offensive names." Davis, 526 U.S. at 651–652. Indeed, the female classmate's answer to the bus monitor's question that "I think he is gay" was a mere expression of opinion not directed to Plaintiff at all.   Significantly, nowhere in Plaintiff's M.G.'s reports of peer-to-peer conflict of pushing, tripping or threats from students M.V., E.D., or others is there any evidence or allegations the physical contact was accompanied by sexually charged name-calling.   Plaintiff's mother conceded he engaged in defiant behavior towards adults, and his peer conflict with classmates was found by investigators to be due to M.G.'s "habits of initiating and engaging in oppositional interactions with his peers." See SOF ¶¶26, 29, 45, 80.

Other Federal Courts have rejected claims where "the alleged harassment consisted merely of insults, name-calling and pushing which, though upsetting to plaintiff, is not sufficiently severe or offensive as to be actionable under Title IX." Tyrrell v. Seaford Union Free Sch. Dist., 792 F. Supp. 2d 601, 623, 629 (E.D.N.Y. 2011) (rejecting plaintiff's claims that students calling her such names as "lesbian" and "carpet-muncher," and teasing her about a sexual encounter between herself and another female because such claims are "based upon her perceived lesbianism and/or bisexuality, not upon her gender.")  For example, the Tenth Circuit rejected a plaintiff's Title IX claim that after a high school football team hazing wherein upper-classmen grabbed plaintiff "as he came out of the shower, forcibly restrained and bound to a towel rack with adhesive tape" and also taped his genital area and brought a girl into the locker room to view him. See Seamons v. Snow, 84 F.3d 1226, 1230 (10th Cir. 1996) (plaintiff alleged School's response to the hazing assault was sexually discriminatory and harassing and defendants expected him to conform to a macho male stereotype, as evidenced by their suggestion to him that he "should have taken it like

a man.")  The Tenth Circuit ruled that plaintiff "failed to allege facts sufficient to indicate that the conduct being challenged (which it must be remembered, post-dates the locker room assault) was 'sexual' in nature, as defined in the hostile environment context … that would suggest he was subjected to unwelcome sexual advances or requests for sexual favors, or that sex was used to contribute to a hostile environment for him."  <u>Seamons</u>, 84 F.3d at 1232-1233.  As further example, the Eighth Circuit rejected a plaintiff's claim that "mere name-calling and rumors with sexual connotations are sufficient to meet Title IX."  <u>Wolfe v. Fayetteville, Arkansas Sch. Dist.</u>, 648 F.3d 860, 862, 868 (8th Cir. 2011) (Plaintiff alleged he "was harassed several times per week including pushing, shoving, name-calling, and being falsely labeled as homosexual" including "gender-based epithets such as 'faggot,' 'queer bait,' and 'homo,'" while also alleging was punched, had his head slammed into a window, and was victim of a defamatory website Facebook page called 'Every One [sic] That Hates Billy Wolfe.'").  In <u>Wolfe</u> the School District submitted evidence that the "motive underscoring the misconduct was not sex-based … they did not perceive Wolfe as homosexual and they believed he conformed to typical male gender stereotypes," but instead the homosexual name-calling was "an angered response to Wolfe's mistreatment of other students [including that plaintiff] had previously bullied a friend of theirs suffering from cerebral palsy."  <u>Wolfe</u>, 648 F.3d at 862-863.  Similarly, another Federal Court rejected a Title IX claim by a middle school student whose classmates called plaintiff names of "gay," "fag," "queer," "Mr. Clean" or "man boobs" because there was no evidence such name-calling was because of plaintiff's sex, sexual orientation or perceived sexual orientation, ruling "[s]uch teasing is not sufficient to establish a Title IX claim."  <u>See</u> <u>Patterson v. Hudson Area Sch.</u>, 724 F. Supp. 2d 682, 691 (E.D. Mich. 2010) (relying on contrary evidence that teasing due to plaintiff gaining about 40 pounds between the latter part of plaintiff's sixth grade year and the beginning of his seventh grade year).

It is clear that teasing and bullying based on personal animus are not actionable under Title IX.  See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156, 165 (5th Cir. 2011) (reasoning there is nothing in the record to suggest that the harasser, in calling the female plaintiff a "ho," was motivated by anything other than personal animus, rather than "because of sex").  As one federal judge emphasized "that the standards relevant to the 'adult' workplace cannot be imported wholesale into the educational context, particularly when young children are involved"; adding "Name-calling, teasing, and even physical touching take on a different significance when they occur between children, and are also more common."  Doe v. Oyster River Co-op. Sch. Dist., 992 F. Supp. 467, 476 (D.N.H. 1997)  In the present case, there are no allegations of a sexual assault or any sexual touching by classmates.  The objectionable epithets of "gay" and "skittles" alone cannot suffice to show bullying "because of sex".  Nor is there any evidence that Plaintiff M.G.'s peer conflict of tripping, pushing or striking was done by his classmates "because of Plaintiff's sex." There is no evidence Plaintiff was disadvantaged in the terms or conditions of his education to which members of the other sex are not exposed.  Alleging name-calling simply tinged with sexual connotations is not sufficient.  This is merely a case where a Title IX claim is tacked onto circumstances reciting schoolhouse personality conflicts not arising "because of sex."

2. **The Equal Protection Claim Fails Due to Lack of Similarly Situated Persons and Class-of-One Claims do Not Apply to Discretionary School Decisions**

Counts II and III both assert claims of Equal Protection violation, with Count II claim the Defendants failed to "to protect the minor Plaintiff MG … from the acts of sexual, sexual orientation, gender-identity abuses included but not limited to verbal harassment because of sex, gender, sexual orientation, gender-identity bias"; and Count III alleging a "class-of-one theory of liability" because Plaintiff was "intentionally treated differently than other students similarly

situated in his 4th, 5th, and 6th grade classes." See Pl. Compl. ¶¶95, 100-101.  The Equal

Protection Clause of the Fourteenth Amendment provides that "no state shall…deny to any person

within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Essentially,

this provision is "a direction that all persons similarly situated should be treated alike." City of

Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  Thus, to establish an equal

protection violation, a plaintiff must prove that, "compared with others similarly situated, he was

selectively treated ... based on impermissible considerations such as race, religion, intent to inhibit

or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

Barrington Cove L.P. v. R.I. Housing & Mtg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001).  Moreover,

a plaintiff must further prove an intent to discriminate on the part of the defendants based on

plaintiff's protected status; disparate treatment alone is not enough.  Personnel Admin'r of Mass.

v. Feeney, 442 U.S. 256, 292 (1979); Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997).

Plaintiffs do not, and cannot, identify any similarly situated persons treated differently,

which is be fatal to the claim.  The First Circuit explained that an Equal Protection "plaintiff bears

the burden of showing that his comparators are similarly situated in all respects relevant to the

challenged government action." Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir.

2013) (discussing a "class-of-one" claim) (citations omitted).  Based upon that principle, the

Gianfrancesco court affirmed the district court's dismissal of a class-of-one equal-protection claim

where the complaint identified one comparator but made "no effort to establish how or why the

[the comparator] [was] similarly situated to [plaintiff] in any relevant way, and [did] not mention

any other putative comparator." Id. 712 F.3d at 640.  A complaint is not sufficient when it "merely

alleges that nameless, faceless 'other' [persons] were given better treatment.  Bare allegations that

'other' [persons], even 'all other' [persons], were treated differently do not state an equal

protection claim; a complaint must attempt to show in some fashion that these 'other' [persons] were situated similarly to the plaintiff." See GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1367-1368 (11th Cir. 1998).  Here, Plaintiff does not identify even a single comparator treated more favorably than the Plaintiff with regard to the prevention or response to alleged harassment. Moreover, Plaintiffs cannot show "'compared with others similarly situated, [he] was selectively treated ... based on impermissible considerations such as ... malicious or bad faith intent to injure a person.'"  Barrington Cove L.P., 246 F.3d 1, 7 (1st Cir. 2001) (emphasis in original).  "Two persons or entities are similarly situated if 'a prudent person, looking objectively at the incidents [complained of], would think them roughly equivalent and the protagonists similarly situated ... 'in all relevant respects.'" Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008).  (stating the "Court must be able to compare apples to apples. Appellants in this case, however, have presented us with a fruit basket.") The failure to identify any specific students similarly situated here is fatal to the Equal Protection claim.

In addition, the Supreme Court has held that class-of-one Equal Protection claims are not applicable to discretionary governmental decisions, which bars such claims arising from School officials' decisions such as student discipline and investigating code of conduct violations. See Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008) (holding class of one theory does not apply to government decisions made in role as employer). The Supreme Court explained:

> "There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise."

Engquist, 553 U.S. at 603. See, e.g.. The First Circuit "agree[d] with those federal courts that have

found the [Enquist] case applicable beyond government staffing." Caesars Mass. Mgmt. Co., LLC v. Crosby, 778 F.3d 327, 336 (1st Cir. 2015).   Consequently, post-Engquist, a plaintiff who proceeds on a class of one claim must allege that "the differential treatment resulted from non-discretionary state action." See Catcove Corp. v. Patrick Heaney, 685 F. Supp. 2d 328, 333 (E.D.N.Y. 2010) (holding Engquist precludes "class-of-one" zoning-related claims because zoning is a classic example of a "state action" that involves "discretionary decision making.")   Here, Plaintiffs' Complaint posits the Equal Protection claim on the alleged "hostile and unsafe learning environment" and slights such as being given the book "*Gracefully Grayson*", using a notebook to communicate with his teacher, and the alleged refusal to investigate or eliminate harassment.   See Pl. Compl. ¶¶97, 102-103.   The decisions by School officials concerning classroom management, student discipline and enforcing the code of conduct which form the basis of this lawsuit are discretionary by nature and by statute.   In fact, one Court has concluded that the Engquist decision "would foreclose a 'class of one' claim by plaintiffs in connection with the discretionary decision by school administrators … whether [a student] should have been removed from the school and disciplined." DeFabio v. E. Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 494 (E.D.N.Y. 2009) aff'd, 623 F.3d 71 (2d Cir. 2010).   Consequently, post-Engquist, a plaintiff who proceeds on a class of one claim must allege that "the differential treatment resulted from non-discretionary state action."   How an individual school official investigates and disciplines students accused of harassment involves "the virtually plenary discretion that defines the state activity places this case squarely within the Engquist rule limiting class-of-one redress." Caesars Mass. Mgmt. Co., LLC v. Crosby, 778 F.3d 327, 337 (1st Cir. 2015).   The allegations against the Defendants in this lawsuit focus on the failure to prevent or respond to harassment, which are by nature discretionary, cannot support an Equal Protection class-of-one claim.

**3.  No Governmental Civil Rights Liability on Theory of *Respondeat Superior***

The only parties named as Defendants in this case are the Public School entities, Brooke Charter School and its Board of Trustees; there are no natural persons subject to this lawsuit.[5]  See Pl. Compl. ¶¶8-10.  The Charter School law provides that a "commonwealth charter school shall be a public school, operated under a charter granted by the board, which operates independently of a school committee and is managed by a board of trustees. The board of trustees of a commonwealth charter school, upon receiving a charter from the board, shall be deemed to be public agents authorized by the commonwealth to supervise and control the charter school."  See Mass. Gen. L. ch. 71 § 89(c); see also Sch. Comm. of Hudson v. Bd. of Educ., 448 Mass. 565, 567, 863 N.E.2d 22, 24 (2007) (discussing the charter school statute).  It is well-settled, however, that governmental liability under §1983 cannot be based on a theory of respondeat superior. Monell v. Dep't of Social Services, 436 U.S. 658 (1978). Instead, governmental liability "attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986). Absent evidence of the official custom, policy or practice, a municipality cannot be held vicariously liable for the unconstitutional acts of its officers or employees. Monell v. Dep't. of Social Services, 436 U.S. 658, 665 (1978). The existence of an unconstitutional policy cannot be inferred from an isolated instance of unconstitutional activity. Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). The unconstitutional municipal policy must reflect the municipality's policymaker's "deliberate

---

[5]  The Complaint improperly names parties not involved in the operations of the School.  The proper party, Brooke Charter Schools, is managed by a Board of Directors (Trustees), as is required by the charter schools enabling statute.  See Mass. Gen. L. ch. 71 § 89.  The Brooke School Foundation, Inc., however, is a separate legal entity that is a registered Nonprofit Corporation (501(c)(3)) organized for the purpose of coordinating financial support for Brook Charter Schools, and acts as a fundraising organization to supplement the resources of the schools.  There is absolutely no evidence that the Foundation had any role in the daily operations of the school or in Plaintiff's tenure as a student.

indifference" to the rights of its citizens. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). Finally, the plaintiffs must establish "an affirmative link" between the policy and the alleged constitutional violations. <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87, 92 (1st Cir. 1994). Out of concern that municipal liability based on fault might collapse into de facto *respondeat superior* liability, the Supreme Court "set a very high bar for assessing municipal liability under <u>Monell</u>." <u>Young v. City of Providence</u>, 404 F.3d 4, 26 (1st Cir. 2005). Plaintiffs cannot prove an express policy or widespread practice of tolerating student-on-student harassment or failing to investigate allegations of harassment. <u>See</u> <u>Fennell v. Marion Ind. Sch. Dist.</u>, 963 F. Supp. 2d 623, 640 (W.D. Tex. 2013) ("A 'handful' of [harassment] instances … will not rise to the level of a pervasive custom or practice."). Nowhere in the Complaint do the Plaintiffs even allege the existence of a governmental custom or policy which caused the allegedly unconstitutional denial of civil rights. The absence of such proof or allegations is fatal to their §1983 claim against the School. <u>See, e.g.</u> <u>Williams v. Bisceglia</u>, 115 F. Supp. 3d 184, 189 (D. Mass. 2015) (conclusory allegations fail to plead "'the affirmative link necessary to sufficiently plead a supervisory liability claim,' and/or a policy or custom of the City which led to the alleged constitutional violation").

## B. State Law Claims Fail[6]

### 1. Ch. 76 §5 Damages Claim Barred by Exhaustion Requirement and MTCA Immunity

Count IV alleges violations of both the Massachusetts Equal Rights Amendment ("ERA") and the separate statutory prohibition against discrimination in education found at Mass. Gen. L. ch. 76 §5. The Supreme Judicial Court noted "Article 1 of the Declaration of Rights of the Massachusetts Constitution, as amended by art. 106 of the Amendments to the Constitution,

---

[6] Because Plaintiff federal claims fail, this Court should dismiss plaintiffs' remaining state law claims due to lack of subject matter jurisdiction. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 727 (1966); <u>Cullen v. Mattaliano</u>, 690 F. Supp. 93, 99 (D. Mass. 1988). Nonetheless, this court may exercise supplemental jurisdiction over the state law claims even if dismissing the federal claims. <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 256-57 (1st Cir. 1996).

ratified by the people on November 2, 1976, provides in part: 'Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin.'"  See Attorney Gen. v. Mass. Interscholastic Athletic Ass'n, Inc., 378 Mass. 342, 345 n.4, 393 N.E.2d 284, 286 n.4 (1979). The parallel Massachusetts statute prohibiting discrimination in education, found at Mass. Gen. L. ch. 76 §5, provides:

> "Every person shall have a right to attend the public schools of the town where he actually resides…. No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, gender identity, religion, national origin or sexual orientation."

See Mass. Gen. L. ch. 76, § 5.  The S.J.C. explained that "Section 5 was amended in 1971 (St.1971, c. 622, s 1) to include sex (and national origin) among the forbidden classifications and to add the 'advantages, privileges and courses of study' language."  Attorney Gen. v. Mass. Interscholastic Athletic Ass'n, Inc., 378 Mass. 342, 345 n.5, 393 N.E.2d 284, 286 n.5 (1979).  "Section 5 establishes a level of protection against sex discrimination higher than that thought to be provided at the time by the State or Federal Constitution. With the passage of ERA, our constitutional law has caught up to s 5." Id. 378 Mass. at 345 n.5.  In the Mass. Interscholastic Athletic Ass'n case both the parties and the S.J.C. expressly presumed that "the statute equates with ERA".  Id.

Neither the constitutional ERA nor Ch. 76 §5 expressly create a private right of action for money damages.  Instead a separate section in Ch. 76 establishes that the parent, guardian or custodian of the student whose rights have been violated under the statute has a private right of action in tort after exhausting administrative remedies.  See Mass. Gen. L. ch. 76 § 16. Specifically, Section 16 states that a pupil "who has been refused admission to or excluded from the public schools or from the advantages, privileges and courses of study of such public schools shall on application be furnished by the school committee with a written statement of the reasons

therefor, and thereafter, if the refusal to admit or exclusion was unlawful, such pupil may recover from the town." See Mass. Gen. L. ch. 76 § 16. The federal court has held that a public school student was required to seek administrative redress with school committee regarding bullying by fellow students prior to pursuing claim under MGLA c. 76 § 16. Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 353 (D. Mass. 2016) ("the statute, on its face, contemplates that a student or their parent makes an application to the school committee and receives a written statement in response prior to recovering from the responsible town.") The failure of Plaintiff to exhaust administrative remedies bars this claim. Id.

Furthermore, the Massachusetts Tort Claims Act is now the exclusive remedy for damages claims against state and local public employers. See Mass. Gen. L. Ch. 258 §2. Specifically, for claims of "personal injury … caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, … [t]he remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer." Id. The passage of the Tort Claims Act in 1978 supersedes preexisting legal remedies against a governmental entity "regardless of whether the tort claim was within or outside the scope of sovereign immunity before passage of the act." Magliacane v. City of Gardner, 483 Mass. 842, 850, 138 N.E.3d 347, 356 (2020) (discussing history and effect of Tort Claims Act); see also Tivnan v. Reg. of Motor Vehicles, 50 Mass. App. Ct. 96, 734 N.E.2d 1182 (2000) (holding Tort Claims Act superseded statute permitting parties injured by violation of Fair Information Practices Act (FIPA) to claim damages for injury against public employers). Back in 1965, before the enactment of the Tort Claims Act, the Supreme Judicial Court ruled that ch. 76 § 16 was an exclusive remedy available to a student against a Town, meaning "that this was the only remedy available for one seeking damages in tort." Leonard

v. Sch. Comm. of Attleboro, 349 Mass. 704, 707, 212 N.E.2d 468, 471 (1965). Because the Tort

Claims Act was later enacted, claims under ch. 76 § 16 alleging "failure to take action to remedy

the harmful conduct of third parties ... is precisely the type of claim from which the Legislature

intended to immunize public entities pursuant to G.L. c. 258, § 10(j)." Doe v. D'Agostino, 367 F.

Supp. 2d 157, 178 (D. Mass. 2005); see also Harrington v. City of Attleboro, 172 F. Supp. 3d 337,

353 (D. Mass. 2016) (that "assuming Plaintiffs notified the school committee and received a

response, the claim would likely be barred by § 10(j).") As discussed below, the immunity

preserved for the School by the Tort Claims Act under § 10(j) from claims not originally caused

by the public employer bars Plaintiff's money damages claim under ch. 76 §5.

## 2. Defendants Cannot Be Liable for Negligence Under the Massachusetts Tort Claims Act

Plaintiff's Complaint brings five negligence-based claims: Count VI alleging Negligence;

Counts VII and VIII alleging Negligent Infliction of Emotional Distress; Count XI alleging

"Negligent Supervision of Students"; and Count XII alleging "Negligent Hiring, Supervision and

Retention" of teacher Katrina Freund. All of these negligence-based claims are subject to the

Massachusetts Tort Claims Act, Mass. Gen. L. ch. 258, because the Defendant is a public charter

school. See Mass. Gen. L. ch. 71 § 89 (statute authorizing creation of charter schools as public

schools); see also Billing v. Martha's Vineyard Pub. Charter Sch., 2014 WL 69867, at *5 (D. Mass.

Jan. 8, 2014) (stating parties do not dispute that the School and the Board are immune under the

Massachusetts Tort Claims Act, Mass. Gen. L. c. 258, § 10(c)).

### a. No Evidence of Breach of any Duty of Care

"Plaintiffs have the burden of proving every element of their negligence claim." Bernal v.

Weitz, 54 Mass. App. Ct. 394, 396, 765 N.E.2d 798, 800 (2002). "To sustain a claim of negligence,

a plaintiff must establish that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant

committed a breach of that duty, (3) there was a causal connection between the defendant's negligence and the plaintiff's injury or damage, and (4) the plaintiff sustained damages." Helfman v. Northeastern Univ., 485 Mass. 308, 315, 149 N.E.3d 758, 767 (2020). "[T]he existence of a duty is a question of law, and is thus an appropriate subject of summary judgment." Jupin v. Kask, 447 Mass. 141, 146, 849 N.E.2d 829 (2006). As a threshold matter, the Plaintiff Natasha Grace's Negligent Infliction of Emotional Distress claim arising from her son's alleged bullying at the school fails because there is no legal duty owed to a parent vis-à-vis the student discipline and enforcement of the code of conduct, where the parent is not within the "zone of danger" to maintain such claims. See, e.g. Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 314 (D. Mass. 2017) (applying Mass. law) (parents of student sexually assaulted by his football teammates could not recover for negligent infliction of emotional distress because they failed proximity requirement). As for the minor plaintiff's claim of negligence, there is simply no evidence in the summary judgment record to establish the Defendants breached any duty of care owed when the school had well-established code of conduct and took reasonable steps to investigate and enforce any known violations. See SOF.

**b.  The Defendant Is Immune from Suit for Failing to Prevent Student-on-Student Bullying**

The MTCA represents a limited waiver of sovereign immunity, whereby the Massachusetts Legislature opted to retain immunity for government entities under certain situations. See Mass. Gen. Laws ch. 258 §§ 10(a)-(j). One of the immunities preserved is from:

> "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, **including the violent or tortious conduct of a third person**, which is not originally caused by the public employer or any other person acting on behalf of the public employer…."

See Mass. Gen. L. ch. 258 §10(j)(emphasis supplied). The seminal case interpreting §10(j) held a municipality immune from liability for the stabbing death of a student by interlopers who gained

access to the school.  See Brum v. Town of Dartmouth, 428 Mass. 684, 692, 704 N.E.2d 1147, 1153 (1999).  The aim of the provision is to provide immunity for claims that were not "originally caused" by an *affirmative act* of the public employer.  Id.  Under § 10(j), a plaintiff cannot recover based upon a defendant's mere neglect of a duty, because if such neglect could be construed as the "original cause" of the "condition or situation" which caused the plaintiff's harm, "then the opening words of § 10(j), immunizing act[s] or failure[s] to act to prevent, which …[is] the provision's principal purpose, would be virtually read out of the provision."  Brum, 428 Mass. at 692-93.  This exception to immunity requires proof of an affirmative act (not merely a failure to act) that materially contributed to creating the specific condition or situation that resulted in the harm to the plaintiff.  Kent v. Comm., 437 Mass. 312, 318-19 (2002).

Massachusetts courts have consistently held that municipalities are immune from suit for failing to prevent student-on-student harassment, assault and bullying.  Harrington v. City of Attleboro, 172 F.Supp.3d 337, 348-49 (D.Mass. 2016) (failure to prevent bullying barred by Section 10(j)); Hankey v. Town of Concord-Carlisle, 136 F.Supp.3d 52, 75-76 (D.Mass. 2015) (same).  More recently the Supreme Judicial Court applied this immunity to bar negligence allegations that the school failed to keep plaintiff and the bullies apart, or to act in a manner that ensured plaintiff's safety, because such claims "are barred by § 10 (j) because they originate from a failure to act rather than an affirmative act."  Cormier v. City of Lynn, 479 Mass. 35, 41, 91 N.E.3d 662, 667 (2018).  The hiring, retention and supervision of its employees cannot be deemed the "original cause" of the "condition or situation" that resulted in the harm to Plaintiffs because unduly remote causes are not actionable.  Kent, supra, at 319.  Any alleged failure to enforce harassment policies, similarly, are omissions which are not "affirmative" acts for liability to attach.  See, e.g. Jones v. Maloney, 74 Mass. App. Ct. 745, 749 (2009) (school district immune under

Section 10(j) for assistant principal's negligent investigation of sexual assault in the classroom); The <u>Cormier</u> Court ruled that even though "some actions by the public defendants contributed indirectly to [plaintiff]'s injuries, for example, [plaintiff] and his tormentors were required to attend school and were placed in the same class. These actions, however, 'are too remote as a matter of law to be the original cause' of [plaintiff]'s injuries under § 10 (j)." <u>Cormier v. City of Lynn</u>, 479 Mass. 35, 41, 91 N.E.3d 662, 667 (2018). Plaintiff's allegations of negligence inescapably boil down to allegations that it failed to prevent them, triggering the Town's sovereign immunity under Section 10(j).[7]

### 3.  No Private Right of Action for Money Damages Under Education Laws and Regulations

Three different Counts in the Complaint purport to seek money damages under various Massachusetts laws or regulations:  Count V claims violations of the Anti-Bullying law found at Mass. Gen. L. Ch. 71 §37O; Count IX asserts "Violation of Parental Notification Law (M.G.L. c. 71. s. 32A)"; and Count X alleges "Failure to Report Threat to Personal Safety of a Student (603 CMR 33.00)".  None of these statutes or regulations create a private right of action for money damages.  Indeed, the Anti-Bullying law expressly disclaims such a right.

#### a.  Massachusetts Anti-Bullying Law Does Not Create a Private Right of Action

In 2010, the Massachusetts Anti-Bullying Statute was enacted.  <u>See</u> Mass. Gen. L. c. 71 § 37O.  Section 37O outlines a number of responsibilities of public schools and school officials, but the Legislature explicitly declined to create a private right of action for violations of the statute. <u>Id.</u>  The law specifies that "Nothing in this section shall supersede or replace existing rights or

---

[7] Moreover, a separate immunity under §10 exists for "any claim based upon the exercise or performance or the failure to exercise or perform a <u>discretionary function</u> or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." Mass. Gen. L. ch. 258, § 10(b).  This immunity would also bar Plaintiffs' negligence claims based on the School's alleged failure to take sufficient disciplinary action against the alleged bullies.  <u>See</u> <u>Willheuck v. Town of Mansfield</u>, 164 F. Supp. 2d. 127, 135-136 (D. Mass. 2001) (discretionary function immunity applied to school officials' decision to approve high school student with history of threatening behavior for admission in restrictive program for students).

remedies under any other general or special law, <u>nor shall this section create a private right of</u> <u>action</u>." Mass. Gen. L. ch. 71 § 37O(i). This express prohibition bars the courts from implying any private cause of action under the law. <u>Salvas v. Wal-Mart Stores, Inc.</u>, 452 Mass. 337, 373 (2008) (courts may not infer an implied private right of action when the Legislature explicitly prohibits doing so). This is consistent with the MTCA preservation of immunities for schools and other local government agencies, subject to narrow exceptions, from claims like the Plaintiff's. <u>See, e.g.</u> Mass. Gen. L. ch. 258 § 10(j). Of course, state law provides victims with the ability to sue and recover from bullies who commit torts against fellow students and from the parents whose negligent care allow the bullies to do so. <u>See</u> Restatement (Second) of Torts § 283A (discussing children's tort liability); Mass. Gen. L. ch. 231 § 85G (imposing strict liability on the parent for the intentional acts of his or her minor child). The claim for money damages under the Anti-Bullying statue, ch. 71 § 37O, must be dismissed.

**b. <u>There is No Private Right of Action for Violation of Parental Notification Law</u>**

Count IX of the Complaint alleges "Violation of Parental Notification Law (M.G.L. c. 71. s. 32A)". This Count alleges the Defendants "subjected [plaintiff] to sexual education through the recommendation of *Gracefully Grayson*." <u>See</u> Pl. Compl. ¶138. Chapter 71, § 32A, the so-called Opt-out Statute, adopted as a parental notification law in 1996, provides, in pertinent part:

> "Every city, town, regional school district or vocational school district implementing or maintaining curriculum which primarily involves human sexual education or human sexuality issues shall adopt a policy ensuring parental/guardian notification. Such policy shall afford parents and guardians the flexibility to exempt their children from any portion of said curriculum through written notification to the school principal. No child so exempted shall be penalized by reason of such exemption. …."

<u>See</u> M.G.L. c. 71, § 32A. The Statute further requires the Department of Education to "promulgate regulations for adjudicatory proceedings to resolve <u>any and all</u> disputes arising under this section." <u>Id.</u> (emphasis added). It makes no provision whatsoever for relief beyond such "adjudicatory

proceedings" against a "city, town, regional school district or vocational school district" that either fails to adopt a notification policy, or fails to follow such a policy once it is adopted.

The plaintiffs cannot bring a private right of action to recover under M.G.L. c. 71, § 32A. In Massachusetts, no private right of action can be inferred from a state statute absent clear legislative intent to support such a remedy. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546-547 (1998) (rejecting private right of action from statute governing licensing and approval of drug treatment facilities). Loffredo is consistent with other Massachusetts decisions wherein the courts have consistently refused to imply a private right of action from a statute absent clear legislative intent. See, e.g., Borucki v. Ryan, 407 Mass. 1009 (1990) (no private right of action implied in statute prohibiting disclosure of competency reports); Unitrode Corp. v. Dynamics Corp., 379 Mass. 487, 491-493 (1980) (no private right of action for equitable or injunctive relief implied from corporate take-over statute); Lindsey v. Massios, 372 Mass. 79, 84 (1977) (no private right of action implied from safety statute); Johnson v. United States Steel Corp., 348 Mass. 168, 169-170 (1964) (no private right of action implied from age discrimination statute). Here, the Department of Education regulations create a detailed system whereby a parent dissatisfied with a school principal's decision under M.G.L. c. 71, § 32A, may engage in a dispute resolution process with the school superintendent, and seek further review from the local school committee.[8] See, e.g. 603 C.M.R. § 5.03. "Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Loffredo, 426 Mass. at 547. The DOE regulations make no mention of a private right of action. On the contrary, by detailing a process for the resolution of "any and all disputes," the Legislature expressed its clear intent that

---

[8] If a parent is dissatisfied with the school committee's decision, he or she may then submit a written request for review to the Commissioner, 603 C.M.R. § 5.04(1), who, in turn, will determine the process to be followed to resolve the dispute including, but not limited to, alternative dispute resolution and mediation. 603 C.M.R. § 504(2).

disputes regarding M.G.L. c. 71, § 32A, be resolved at the local and agency levels, not in the courts. Moreover, Plaintiffs failure to exhaust these administrative state law remedies bars there claim. See, e.g. J. & J. Enterprises, Inc. v. Martignetti, 369 Mass. 535, 539, 341 N.E.2d 645, 648 (1976) (recognizing "the doctrine that administrative remedies should be exhausted before resort to the courts … to prevent premature interference with a pending administrative proceeding").

Furthermore, the book *Gracefully Grayson* does not "primarily involve human sexual education or human sexuality issues" within the meaning of Section 32A. "Primarily" means "chiefly, mainly." Town of Eastham v. Clancy, 44 Mass. App. Ct. 901 (1997). The DOE defines "curriculum that primarily involves human sexual education or human sexuality issues" as:

> [C]ourses (typically, sex education or discrete units of a health education or biology course), school assemblies or other instructional activities and programs for which the instruction and materials focus principally on human sexual education, the biological processes of human reproduction and sexual development, or human sexuality issues.

603 C.M.R. § 5.02. *Gracefully Grayson* was included among the available reading materials to advance the goal of teaching diversity and tolerance as expressly encouraged and endorsed by the Commissioner of Education and Department of Education (DOE). See Mass. Gen. L. c. 69 §§ 1D & 1E. Additionally, a teacher suggesting a single book title does not mean the School implemented or maintained a curriculum primarily involving human sexual education or human sexuality issues as governed by the Opt-out statue. See M.G.L. c. 71, § 32A.

### c. Anti-Hazing Reporting Regulation Does Not Create Private Right of Action

Count X of the Complaint is entitled "Failure to Report Threat to Personal Safety of a Student," and alleges that "School failed to report the bullying and harassment against MG to for [sic] his perceived gender/sexual orientation." See Pl. Compl. ¶142. The Massachusetts Regulation cited in the Count does not require schools to report bullying. By its terms, "603 CMR 33.00 governs the content and frequency of reports secondary schools must file with the Board of

Education regarding the distribution of copies of the law against hazing and the adoption of a disciplinary policy concerning the organizers of and participants in hazing activities." See 603 Mass. Code Regs. 33.02.  This is an administrative regulation promulgated by the Department of Elementary and Secondary Education's Board of Education pursuant to M.G.L. c. 269, § 19.  The regulation merely dictates the how schools must report to the Board of Education that they have complied with their obligation to inform students and student organizations that hazing is a punishable crime in the Commonwealth.  See Mass. Gen. L. ch. 269 § 17.  The alleged harassing conduct does not even fit within the definition of "hazing" under the statue.  Id. Moreover, even if the language of the CMR required such a report to be made, the regulation does not provide for a private right of action in response to a perceived "violation" of the regulation.  Any failure to comply with this reporting obligation is to be referred to the Attorney General's Office for enforcement and is not a cause of action available to Plaintiffs.  See Mass. Gen. L. ch. 269 § 19; 603 CMR 33.05.

4. **The Consortium Claim is Derivative and a Public School is Not a "Person" for Liability**

Plaintiff's Complaint contains a remarkable six Counts alleging Loss of Consortium.  See Pl. Compl. Count XIII-XVIII.  In Massachusetts, an action for loss of parental consortium is a statutory, derivative claim, which permits a parent to recover consortium damages when their parental relationship is impacted by serious "injuries" to the child at the hands of a tortfeasor.  See Mass. Gen L. ch. 231 § 85X.  Plaintiff's loss of consortium claims fail as a matter of law for two reasons.  First, the negligence claims, which are the only claims that could support loss of consortium liability, are precluded by the immunities under the Tort Claims Act, thus the derivative consortium claims fail as well.  See Sena v. Comm., 417 Mass. 250, 264-265, 62 N.E.2d. 986, 994 (1994).  Second, the statutory cause of action expressly applies only to "persons."  See

Mass. Gen. L. ch. 231, § 85X (stating "[t]he parents of a minor child . . . shall have a cause of action for loss of consortium of the child who has been seriously injured against any <u>person</u> who is legally responsible for causing such injury.")  The General Laws applicable to all Massachusetts statutes defines "person" to include "corporations, societies, associations and partnerships," but makes no mention of municipalities or government entities.  Mass. Gen. Laws ch. 4, § 7, cl. 23. Massachusetts courts have decided that other statutes using the word "person" do not include governmental entities.  <u>See, e.g.</u>, <u>Williams v. O'Brien</u>, 78 Mass. App. Ct. 169, 178 (2010) (citing Massachusetts cases under the Massachusetts Civil Rights Act).  Federal courts addressing the Consortium statute recognize the term "person" means "[a] plain textual reading of Section 85X does not allow recovery from the municipal defendants." <u>Thomas v. Town of Chelmsford</u>, 267 F. Supp. 3d 279, 315 (D. Mass. 2017); <u>Harrington v. City of Attleboro</u>, 172 F. Supp. 3d 337, 355 (D. Mass. 2016).

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Defendants, Board of Trustees Brooke East Boston, and Brooke School Foundation, respectfully request that this Honorable Court grant their Motion for Summary Judgment as to all counts of Plaintiff's Complaint against them, together with costs, attorneys fees and such other relief this Court deems just and proper.

Respectfully Submitted:

The Defendants,
BOARD OF TRUSTEES BROOKE EAST
BOSTON, and BROOKE SCHOOL
FOUNDATION
By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Cloherty III*
John J. Cloherty IIII, BBO #566522
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jcloherty@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on January 15, 2021.

*/s/ John J. Cloherty III*
John J. Cloherty III

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

Now comes the undersigned Counsel, John J. Cloherty III, Esq, and hereby certifies that, pursuant to Local Rule 7.1, he conferred with Plaintiff's counsel in a good faith effort to narrow the issues raised in the accompanying Motion for Summary Judgment by email on December 23, 2020. The parties were unable to narrow the issues, requiring the filing of the Motion.

*/s/ John J. Cloherty III*
John J. Cloherty III

## REQUEST FOR A HEARING

The undersigned counsel for the Defendants hereby requests a Hearing on this Motion.

*/s/ John J. Cloherty III*
John J. Cloherty III

31